**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TINAMARIE BARRALES and MICHAEL WILLIAMS, individually and on behalf of all those similarly situated, | ) | **No. 1:24-cv-1185** |
| Plaintiffs, | ) | **Class Action** |
| v. | ) | **Jury Trial Demand** |
| GHOST BEVERAGES LLC, and MONDELEZ INTERNATIONAL, INC., | ) | |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT**

Plaintiffs, TINAMARIE BARRALES and MICHAEL WILLIAMS (collectively "Plaintiffs"), on behalf of themselves and all those similarly situated, bring this Class Action Complaint against Ghost Beverages LLC ("Ghost") and Mondelez International, Inc. ("Mondelez") (collectively "Defendants"), alleging as follows:

## INTRODUCTORY STATEMENT

1. "Ghost [is] now taking a page from the e-cig industry's playbook, violating the law by using fun kid-friendly flavors to attract children to products that are meant for adults."[1] Specifically, Ghost is using brands like Mondelez's Sour Patch Kids, Bubblicious, and Swedish Fish brands to market to children energy drinks that are unsafe for children.

[1] December 12, 2022 Truth In Advertising Letter to FTC and FDA Officials, https://truthinadvertising.org/wp-content/uploads/2022/12/12_12_22-Ghost-complaint-letter.pdf

2. Mondelez licenses its child-friendly Sour Patch Kids, Bubblicious, and Swedish Fish trademarks to Ghost for use on these products that harm children.

3. Both companies are taking advantage of children in order to enrich themselves at any cost, at the expense of the health and wellbeing of their customers.

4. This is a nationwide class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendants Ghost Beverages LLC ("Ghost") and Mondelez International, Inc. ("Mondelez") arising from the deceptive, unfair, and misleading promotion of Ghost products using Mondelez branding in the State of Illinois, in the State of California, and throughout the United States.

5. Plaintiffs and the Class Members purchased Ghost's Sour Patch Kids products in reliance on the misleading advertising, which suggested that the products were safe and appropriate for consumption by children. But Plaintiffs' children unfortunately suffered adverse health effects from these products.

## NATURE OF THE ACTION

6. Plaintiffs, Tinamarie Barrales and Michael Williams, on behalf of themselves and all those similarly situated Class Members seek damages, declaratory judgment, permanent injunctive relief, disgorgement of ill-gotten monies, attorney's fees and costs, and other relief from Defendants Ghost and Mondelez, for violation of the Illinois Consumer Fraud Act, the Illinois Uniform Deceptive Trade Practices Act, California's Consumers Legal Remedy Act, California's Unlawful Business Practices Act, unjust enrichment, negligent misrepresentation, and breach of express warranty.

/

/

## PARTIES

7. Plaintiff Tinamarie Barrales is a citizen of California who resides in Los Angeles County, CA and is otherwise sui juris.

8. Plaintiff Michael Williams is a citizen of Illinois who resides in Cook County, IL and is otherwise sui juris.

9. Plaintiffs bring this action on their behalf and on behalf of a class and subclasses of other persons similarly situated ("Class Members").

10. Defendant Ghost Beverages LLC ("Ghost") is a Delaware limited liability company with its principal place of business in Nevada, and does business in Illinois, California, and around the country.

11. Defendant Mondelez International, Inc. ("Mondelez") is a Virginia corporation with its principal place of business in Illinois and does business in Illinois, California, and around the country.

## JURISDICTION AND VENUE

12. This is a national class action, including every purchaser of Ghost energy drinks in the United States.

13. Ghost energy drinks are sold through various retailers throughout the United States, including major retailers in Illinois, and California, like Walmart, Target, 7-Eleven, Jewel-Osco, Meijer, and others.

14. In 2022 alone, Ghost sold nearly $188 million dollars in energy drink products, and their energy drinks were available in around 60,000 stores nationwide.[2] The energy drinks are also

[2] Ghost - Bevnet's Best of 2022 Awards, BevNET's Best of 2022 Awards (2022), https://www.bevnet.com/bestof/2022/ghost (last visited Feb 2, 2024).

available online, including on Ghost's own website and on Amazon.com.

15. The National Class is comprised of people who purchased Ghost energy drinks during the Class Period.

16. This Court has jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: 1) there are at least 100 class members; 2) the combined claims of Class Members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and 3) Defendants and Class Members are citizens of different states.

17. The Court also has jurisdiction pursuant to 28 U.S.C. § 1367 over the Plaintiffs' related state law claims.

18. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2). The Defendants are alleged to perpetrate their illegal conduct in Cook County, Illinois.

## STATEMENT OF FACTS

### THE PLAINTIFFS

19. Plaintiffs, like most consumers, associate candy brands like Sour Patch Kids, Bubblicious and Swedish Fish with products suitable for children and teens.

20. Plaintiffs read and relied on the images of Sour Patch Kids, and the word "**Kids**" prominently displayed in the Sour Patch Kids logo in buying Ghost's energy drink products.

21. Plaintiffs believed and expected that the Ghost drinks were suitable for children and teens, as the word KIDS is displayed prominently while a labeling disclosure is displayed inconspicuously.

22. Plaintiffs purchased one or more varieties of Ghost drinks, including drinks bearing one of the trademarks belonging to Mondelez, on one or more occasions within the statutes of limitations for each cause of action alleged at stores in Illinois and California.

23. Plaintiffs would not have purchased Ghost drinks if they had known they were not safe for consumption by children.

24. Plaintiffs' children were harmed by the consumption of Ghost's energy drinks and Plaintiffs had to discard the remaining drinks.

25. Ghost and Mondelez are involved in deceptive, unfair and misleading advertising by marketing adult energy drinks and supplements to children, despite the fact that such products are not intended for minors and may be harmful to them. Specifically, Ghost currently advertises five candy-inspired energy drinks: Swedish Fish, Sour Patch Kids Redberry, Sour Patch Kids Blue Raspberry, Warheads Sour Watermelon, and Bubblicious Strawberry Splash (in addition to generic flavors Citrus, Tropical Mango, and Orange Cream). Ghost also advertises various candy-flavored supplements, as well as Welch's Grape. These products smell and taste like the corresponding candies, and the packaging of these products is brightly colored and includes pictures of the candy. Ghost's Swedish Fish energy drink even has a fish-scale texture on its can.

26. Ghost's energy drinks are sold at various retailers throughout the United States, including major retailers in Illinois and California like Walmart, Jewel-Osco, Meijer, Target, 7-Eleven, and others.

27. Ghost's energy drinks do not disclose in a meaningful manner that they are not suitable for children. Instead, the only indicator that the products are not for children is extremely fine print on the side of the can that is incredibly difficult to see or read. Moreover, the inclusion of the word "Kids" on the front Defendants' Sour Patch Kids branded products, which is much more visible than the disclaimer, misleads consumers to believe that the products are appropriate for children.









**GHOST AND ITS MONDELEZ BRANDED ENERGY DRINKS**

28. Ghost was founded in 2016 by Dan Lourenco and Ryan Hughes. The company sells energy drinks and other products online and in grocery stores, convenience stores, and vitamin stores through a distribution agreement with Anheuser-Busch InBev SA/NV.

29. Energy drinks, including those sold by Ghost, contain multiple stimulants (ginseng, guarana, taurine, etc.) in addition to caffeine. Sugar or sweeteners, such as those in Sour Patch Kids, Bubblicious, and Swedish Fish flavoring, hide the taste of bitter ingredients such as caffeine and taurine, making them more palatable to children and adolescents. In addition, B-vitamins are added to make the drinks seem healthy. Because energy drinks are consumed like soft drinks and contain stimulants that reinforce each other as well as carbonation which increases the speed of caffeine uptake in the blood, they are associated with a greater health risk than coffee, even though coffee has more caffeine. Ghost hides the nature of the ingredients in its drink by providing meaningless trademarked terms instead of the actual compounds. For example, Ghost states that the drinks contain “Carnipure,” “Astragin,” and “Neuro Factor” as well as “4 daily vitamins.”

30. Sour Patch Kids, Bubblicious, and Swedish Fish are Mondelez brands. Ghost’s Sour Patch Kids, Bubblicious, and Swedish Fish drinks are sold under a brand partnership with Mondelez through which Ghost uses Mondelez branding to sell its energy drinks.

31. On information and belief, Mondelez has an agreement with Ghost through which Mondelez receives a percentage of the revenue from the sales of Ghost products using Mondelez brands. Accordingly, Mondelez directly benefits from each and every unit of Ghost's energy drinks that is sold using Mondelez branding.

32. Mondelez describes Sour Patch Kids as a "tasty soft gummy candy with a coating of sour sugar, so the taste of the candy changes from sour to sweet." The candy is shaped like kids, hence the name of the candy. Mondelez's website depicts a child eating Sour Patch Kids candy. See https://www.mondelezinternational.com/our-brands/sour-patch-kids/. Swedish fish are red, sweet gummy candies in the shape of fish. Bubblicious is a colorful fruit-flavored gum primarily marketed to kids.

33. Sour Patch Kids branding is prominently displayed on Ghost's energy drinks and supplements, including the colorful candy kid shapes. Moreover, the word "Kids" in the Sour Patch Kids logo, which is conspicuously featured on the front of the can, suggests that the product is safe for children. This is especially the case in many online stores where the product is listed, without punctuation or extra spacing, as "Ghost Energy Drink Zero Sugar Sour Patch Kids Blue Raspberry 16 Oz." See, e.g., https://www.amazon.com/Ghost-Energy-Ready-Drink-Raspberry/dp/B08XKJT1YN. Mondelez's Swedish Fish and Bubblicious branding is also prominently displayed on those flavors of Ghost's energy drinks.

34. Ghost's energy drinks and supplements are brightly colored. The Sour Patch Kids Redberry drink has bright red and yellow-colored packaging, and the Sour Patch Kids Blue Raspberry drink has bright blue and yellow packaging. Ghost's Bubblicious energy drink is bright pink. The Swedish Fish energy drink is bright yellow, blue, and red and has a picture of the Swedish Fish candy as well as fish scales on the can.

35. While Ghost readily admits that its products are inappropriate for minors and even cautions that adults should not consume these products without first consulting a healthcare professional, the company's kid-friendly branding and marketing lack any clear and conspicuous warning that its products should not be consumed by children. In fact, the only purported "disclosure" of this material information is in illegible fine print inconspicuously placed on the side of its energy drink cans and supplement containers.

36. To make things even more confusing for consumers, Ghost also sells a "hydration drink" in a plastic container with an identical design with its energy drink.

37. Ghost's marketing targets minors, video gamers, and fitness enthusiasts, among others, and is primarily comprised of online advertising, social media influencer marketing, and various promotional sponsorships. Minors who see this marketing are never informed that these products are only intended for healthy adults who have consulted with a healthcare professional and that the products may cause them harm.

38. The reason why Ghost is targeting minors is that, despite adverse health consequences, children are nowadays the prevalent market for energy drinks in many unregulated markets. The European Food Safety Authority initiated a study to gather data of energy drink consumption in 16 countries of the European Union. A total of 68% of adolescents (aged 10–18 years old), 30% of adults, and 18% of children (<10 years old) were found to consume them[3]. There is twice likely that an energy drink will be consumed by an adolescent than an adult.

39. In Ontario, Canada, in a study involving over 23,000 students under the age of 18,

---

[3] Soós R, Gyebrovszki Á, Tóth Á, Jeges S, Wilhelm M. Effects of Caffeine and Caffeinated Beverages in Children, Adolescents and Young Adults: Short Review. Int J Environ Res Public Health. 2021 Nov 25;18(23):12389. doi: 10.3390/ijerph182312389. PMID: 34886115; PMCID: PMC8656548.

one in five students admitted to drink energy drinks at least once a week[4].

40. Both Ghost and Mondelez decided to take advantage of the lack of knowledge and impressionability of minors, by creating and distributing energy drinks designed to appeal specifically to children and teens.

41. Ghost also sponsors and partners with various youth-focused entities and influencers to promote its candy-inspired products to children.

42. For example, Ghost partners with esports and gaming platform FaZe Clan, Inc. The self-described "youth focused" gaming platform with a following of more than 510 million consumers is so popular among minors that sources report one in five American boys aged 13-17 support FaZe Clan, more than any traditional sports team. In fact, a quote on FaZe Clan's website notes that they "influence kids." According to a press release published on the Ghost website, the goal of its partnership with FaZe Clan is "to propel GHOST as a household name within gaming and youth culture." It is estimated that at least 26% of video gamers are under the age of 18.[5]

43. Ghost also sponsors various youth organizations, including providing "goods" to a high school football team comprised of more than two dozen freshmen and sophomore students (kids aged 14-16) and a nonprofit supporting underprivileged youth. All this while the American College of Sports Medicine, unequivocally states for years that youth should forego these products entirely[6].

---

[4] Reid, J.L., Hammond, D., McCrory, C. *et al.* Use of caffeinated energy drinks among secondary school students in Ontario: Prevalence and correlates of using energy drinks and mixing with alcohol. *Can J Public Health* 106, e101–e108 (2015). https://doi.org/10.17269/CJPH.106.4684

[5] Chris Morris, About as many people older than 45 play video games as Kids under 18, Fortune (2023), https://fortune.com/2023/07/12/video-games-player-demographics-2023-older-younger-gamers-equal/ (last visited Feb 8, 2024).

[6] Higgins, John P. MD, MBA, M.PHIL, FACC, FACP, FAHA, FACSM, FASNC, FSGC1; Babu, Kavita MD, FACEP, FACMT2; Deuster, Patricia A. PhD, MPH, FACSM3; Shearer, Jane PhD4. Energy Drinks: A Contemporary Issues Paper. Current Sports Medicine Reports 17(2):p 65-72,

44. One can of Ghost Energy contains 200 mg of "Natural Caffeine," among other ingredients. According to experts, children between the ages of 12 and 17 should have less than 100 mg of caffeine per day, as caffeine on its own can cause negative health effects including, among other things, anxiety, high blood pressure, increased heart rate, insomnia, heart palpitations, and behavioral issues.[7]

45. Also, the caffeine content of Ghost might be different from the labels, since they contain other compounds, like Taurine, increasing the effects of caffeine, Neurofactor Coffee also contains caffeine[8].

46. As such, the American Academy of Pediatrics has stated that "rigorous review and analysis of the literature reveal that caffeine and other stimulant substances contained in energy drinks have no place in the diet of children and adolescents," and the American Medical Association has adopted a policy supporting a ban on the marketing of energy drinks to children under the age of 18.[9]

47. One study conducted in Norway in 2018 indicated that a total of 19% of children aged 10-12, 53% of children aged 13-15, and 70% of teens aged 16–18 years stated that they sometimes consumed energy drinks. That number is likely significantly higher because it is

---

February 2018. | DOI: 10.1249/JSR.0000000000000454

[7] Caffeine and Kids, Columbia University Irving Medical Center (2022), https://www.cuimc.columbia.edu/news/caffeine-and-kids (last visited Feb 1, 2024).

[8] *Supra* FN2

[9] Temple JL, Bernard C, Lipshultz SE, Czachor JD, Westphal JA, Mestre MA. The Safety of Ingested Caffeine: A Comprehensive Review. Front Psychiatry. 2017 May 26;8:80. doi: 10.3389/fpsyt.2017.00080. PMID: 28603504; PMCID: PMC5445139 *and* Kailyn Rhone, Rising caffeine levels spark calls for ban on energy drink sales ... Reuters (2023), https://www.reuters.com/business/healthcare-pharmaceuticals/rising-caffeine-levels-spark-calls-ban-energy-drink-sales-children-2023-08-30/ (last visited Feb 1, 2024).

estimated that consumption of energy drinks by minors is growing.[10]

48. Although Ghost markets its energy drinks as healthy and providing "epic focus, "consumption of energy drinks has been linked to a number of negative health consequences for minors, including risk-seeking behaviors, poor mental health, adverse cardiovascular effects, and metabolic, renal, and dental conditions, and, in severe cases, energy drinks have led to death when rapidly consumed by young people or in conjunction with other products containing caffeine. Studies have also indicated that frequently reported adverse events in the pediatric population due to energy drink consumption were insomnia (35.4%), stress (35.4%), and depressive mood (23.1%)[11], which may lead to effects like chronic depression suicide ideation[12]

49. Another recent report indicated that young people who consume energy drinks may experience sleep disturbances and have an increased risk of ADHD, anxiety, and mood changes, and in severe cases, heart complications.[13] The article noted that over 30% of teens ages 12–17 consume these beverages on a regular basis. Researchers also discovered a link between energy drink consumption and harmful behaviors like smoking, alcohol and drug use. *Id.* The research found that additional effects of energy drink consumption in teens included short sleep duration,

---

[10] Kaja Lund Iversen et al., Children and adolescents need protection against Energy Drinks Tidsskrift for Den norske legeforening (2018), https://tidsskriftet.no/en/2018/09/kronikk/children-and-adolescents-need-protection-against-energy-drinks#article (last visited Feb 8, 2024).

[11] *See* Energy Drinks and Their Adverse Health Effects: A Systematic Review and Meta-analysis, Ibrahim M. Nadeem, BHSc, Ajaykumar Shanmugaraj, BHSc, Seaher Sakha, Nolan S. Horner, MD, Olufemi R. Ayeni, MD, MSc, PhD, and Moin Khan, MD, MSc, Vol. 13, Issue 3. https://journals.sagepub.com/doi/10.1177/1941738120949181

[12] Kim H, Park J, Lee S, Lee SA, Park EC. Association between energy drink consumption, depression and suicide ideation in Korean adolescents. Int J Soc Psychiatry. 2020 Jun;66(4):335-343. doi: 10.1177/0020764020907946. Epub 2020 Feb 29. PMID: 32114878.

[13] https://www.healthline.com/health-news/energy-drinks-may-cause-mental-health-issues-young-people

poor sleep quality, low academic performance, greater risk of suicide, psychological distress, ADHD symptoms, depression, panic and anxiety disorders. *Id*.

50. Defendants' branding of such products to mimic popular candy and targeting minors with the marketing of these products is deceptive and unfair. Because such products are being marketed to a demographic for whom the products are not safe or appropriate, the drinks have no value for Defendants' target market, and therefore consumers are paying for a product that is worth nothing to them.

51. Moreover, the serious and potentially dangerous issues associated with Ghost's branding and advertising tactics are exacerbated because Ghost fails to clearly and conspicuously disclose in any of the company's marketing materials or on its products that these products are **only** intended for healthy adults **after** they have consulted a healthcare professional.

52. Ghost is no stranger to illegal marketing and unsubstantiated claims. For example, its website stated that Ghost can reduce anxiety, a false claim that was removed from the website in December 2022.

53. Ghost also uses social media "influencers" to illegally promote their energy drinks, in violation of the FTC Act, FTC Regulations and the FTC interpretation of the FTC Act regarding disclosures of material connections. Influencers with over half a million followers promote the use of energy drinks before workout[14] which, according to the American College of Sports Medicine, is dangerous[15].

[14] See Brooke Evers on Instagram: https://www.instagram.com/p/CijgX-gDi6y/

[15] See John P. Higgins, Exercise and Energy Drinks: What Does the Research Say? American College of Sports Medicine (2022), https://www.acsm.org/blog-detail/acsm-certified-blog/2022/03/14/exercise-and-energy-drinks-what-does-the-research-say (last visited Feb 3, 2024)

54. A recent investigation by Truth in Advertising ("TINA") and the Rudd Center at the University of Connecticut determined Ghost drinks are intentionally marketed towards children and teens. *See Supra* FN1.

55. The Federal Trade Commission ("FTC") and Food and Drug Administration ("FDA") have cautioned other companies against similar packaging in the past. For instance, in a warning letter to an e-cigarette company, the FDA wrote, "Candy King Batch e-liquid packaging resembles that for Sour Patch Kids, a candy brand that is very popular with young children." In another letter, the FDA warned that "the labeling and/or advertising of the [e-cigarette product] looks nearly identical to WarHeads Extreme Sour Hard Candy and WarHeads Super Sour Double Drops Liquid Candy, which are…marketed toward, and/or appealing to, children."

56. Here, Defendants' actions are more egregious here because they are actually using candy logos and branding to sell products that are unsafe for children.

57. Many European countries have either banned the sale of energy drinks to children or are in the process of doing so. For instance, Lithuania (2014) and Latvia (2016) have introduced a ban on the sale of energy drinks to individuals under 18 years old. Additionally, Norway, Sweden, and the UK are considering regulating the sale of energy drinks in order to protect children and adolescents against the health damage from consumption of such drinks.

58. Moreover, authorities in Canada have limited caffeine in energy drinks and have banned marketing such drinks towards children aged 12 or younger. This legislation forced energy drink manufacturers to reduce the caffeine in its beverages from 200 mg to 180 mg in Canada.

59. Similarly, in Australia, authorities have enacted legislation limiting caffeine in energy drinks. This change forced Ghost to reduce the caffeine in its beverages from 200 mg to

160 mg in Australia.[16]

**CLASS ALLEGATIONS**

60. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully re-written herein.

61. Plaintiffs assert the counts stated herein as class action claims pursuant to Fed.R.Civ.P. 23

62. Plaintiffs are filing this lawsuit on behalf of all persons that purchased Ghost energy drinks from February 1, 2020 to present, including the period following the filing of this action. ("Class Period).

63. Plaintiffs seek to represent the classes and subclasses composed of and defined as follows:

a. Ghost Nationwide Class: All consumers that purchased Ghost energy drinks in the United States.

b. Mondelez Nationwide Subclass: All consumers that purchased Ghost energy drinks co-branded by Mondelez (Sour Patch Kids, Bubblicious, and Swedish Fish in the United States.

64. Plaintiff Williams seeks to represent two classes composed of and defined as follows:

c. Ghost Illinois Subclass: All Illinois residents that purchased Ghost energy drinks.

d. Mondelez Illinois Subclass: All Illinois residents that purchased Ghost

---

[16] *See* Stack3d, Ghost energy drink launching in Australia with 160mg of caffeine Stack3d (2023), https://www.stack3d.com/2023/11/australian-ghost-energy-drink.html (last visited Feb 3, 2024).

energy drinks co-branded by Mondelez (Sour Patch Kids, Swedish Fish, and Bubblicious).

65. Plaintiff Barrales seeks to represent two classes composed of and defined as follows:

g. Ghost California Subclass: All California residents that purchased Ghost energy drinks.

h. Mondelez California Subclass: All California residents that purchased Ghost energy drinks co-branded by Mondelez (Sour Patch Kids, Swedish Fish, and Bubblicious).

66. Collectively the members of the Nationwide Class and all Subclasses shall be referred to as "Class Members."

67. The Classes exclude counsel representing the class, governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

68. Plaintiffs reserve the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limitation to particular issues.

69. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 ("Rule 23") because there is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

70. Numerosity: Thousands of consumers have been injured by Defendants' deceptive marketing practices, including Plaintiffs. Thousands of consumers have purchased Ghost Sour

Patch Kids branded energy drinks and supplements and paid a premium for them in reliance on the Defendants' representations.

71. Each of the classes represented by Tinamarie Barrales, and Michael Williams have thousands of members and the joinder of all members is impracticable.

72. Typicality: Plaintiffs' story and their claims are typical of the class and, as the named Plaintiffs, they are aware of other persons in the same situation. Plaintiffs and the members of each class sustained damages arising out of Defendants' illegal course of business.

73. Commonality: Since each class purchased Ghost and Mondelez co-branded products and such products are promoted by the Defendants, the questions of law and fact are common to the class.

74. Adequacy: Plaintiffs Tinamarie Barrales, Michael Williams, and their counsel will fairly and adequately protect the interests of each class they represent.

75. Superiority: As questions of law and fact that are common to class members predominate over any questions affecting only individual members, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## COUNT I: VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT

**(On behalf of Plaintiff Williams, Ghost Illinois Subclass and Mondelez Illinois Subclass)**

76. Plaintiff incorporates by reference paragraphs 1- 75 of this Complaint as if fully re-written herein.

77. Michael Williams asserts this count on his own behalf and on behalf of the Ghost Illinois Subclass and Mondelez Illinois Subclass, as defined above, pursuant to Fed. R. Civ. P. 23.

78. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS §§ 505/1, et seq., provides protection to consumers by mandating fair competition in commercial markets for goods and services.

79. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS § 505/2.

80. The ICFA applies to Defendants' acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

81. Defendants are "persons" as defined by section 505/1(c) of the ICFA.

82. Plaintiff and each Class Member are "consumers" as defined by section 505/1(e) of the ICFA.

83. Ghost's products constitute "merchandise" under the meaning of section 505/1(b) and their sale is within the meaning of "trade" or "commerce" under the ICFA.

84. Defendants' misrepresentations and omissions regarding the nature of its products and the safety of its products for children, including the marketing of its products to children, are deceptive and unfair acts and practices prohibited by Chapter 2 of ICFA.

85. Defendants have also engaged in the deceptive and unfair conduct of misrepresenting their product to stores in order to access valuable in-store shelf space by convincing stores that their products are different than other energy drinks and are worth being showcased on premium shelf space. Because of such conduct, Defendants' products were placed in locations most likely to be noticed by children and in such a way that signaled to Plaintiffs and

Class Members that Defendants' products were proven and popular. Had Defendants not engaged in such conduct, Ghost's products would not have been featured on prime store shelves, and Plaintiffs would not have been deceived into purchasing products that were inappropriate for children and therefore worthless to them.

86. Defendants are also in violation of Section 5(a) of 15 U.S.C. § 45(a), which should be considered as a violation of 815 ILL. COMP. STAT. ANN. 505/2 145. Defendants violated the ICFA when they misrepresented facts regarding Ghost products and their safety and appropriateness for children.

87. Defendants, jointly through their partnership, intended that Plaintiffs and Class Members rely upon Defendants' misrepresentations or omissions.

88. Plaintiffs and Class Members relied upon Defendants' misrepresentations and omissions when they purchased Ghost products for their children.

89. If Plaintiffs and Class Members had been aware of the true characteristics of Ghost's products, including the fact that they are not safe or appropriate for children, they would not have purchased them.

90. Defendants also violated section 510/2(a)(5) of the DTPA by its misrepresentations and omissions that Ghost's products are safe or appropriate for children.

91. Defendants' misrepresentations and omissions regarding their energy drinks and supplements were acts likely to mislead the Plaintiff and Class Members acting reasonably under the circumstances, and thus constitute unfair and deceptive trade practices in violation of ICFA, and Plaintiff and Class Members were misled by Defendants' misrepresentations and omissions.

92. As a direct and proximate result of Defendants' violation of the ICFA, Plaintiff and the Class Members have suffered harm in the form of monies paid in exchange for Defendants'

co-branded energy drinks because they would not have purchased the products if they had known the true nature of the products, and they had to discard the products.

93. The value of the loss, calculated as the price paid for Ghost's products is in excess of $5,000,000 for the entire Illinois Subclass.

94. Defendants' practices set forth herein offend public policy, were and are immoral, unethical, oppressive, and unscrupulous, and cause substantial injury to consumers.

**COUNT II: VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(On behalf of Plaintiff Williams, Ghost Illinois Subclass and Mondelez Illinois Subclass)**

95. Plaintiffs incorporate by reference paragraphs 1-75 of this Complaint as if fully re-written herein. Michael Williams asserts this count on her own behalf and on behalf of the Ghost Illinois Subclass and Mondelez Illinois Subclass, as defined above.

96. At all times relevant hereto, there was in full force and effect the Illinois Uniform Deceptive Practices Act, 815 ILCS 510/1, et seq. ("DTPA").

97. Defendants jointly, through their partnership, advertise Ghost Sour Patch Kids, Bubblicious, and Swedish Fish branded products by using the false and misleading advertising and marketing detailed above, including by making misrepresentations or omissions that Ghost products are appropriate and safe for children.

98. Defendants' false and misleading statements and omissions set forth above were made knowingly and intentionally, during a course of conduct involving trade or commerce, with the intent to mislead the named Plaintiffs and the Class.

99. Plaintiffs and their children were harmed as a result of Defendants' false and misleading statements and omissions. Specifically, Plaintiffs spent money on Defendants' products that were inappropriate and unsafe for their children, which they would not have purchased had

they known the true nature of the products. Moreover, Plaintiffs were forced to discard the products.

100. Accordingly, Defendants have violated the DTPA.

**COUNT III: VIOLATION OF THE CONSUMERS LEGAL REMEDY ACT. CAL. CIV. CODE. §§ 1750, ET SEQ.**
**(On behalf of Plaintiff Barrales, Ghost California Subclass and Mondelez California Subclass)**

101. Plaintiffs incorporate by reference paragraphs 1-75 of this Complaint as if fully re-written herein. Plaintiffs assert this count on their own behalf and on behalf of the Ghost California Subclass and Mondelez California Subclass as defined above and pursuant to Rule 23.

102. Defendants are each a "person" within the statutory meaning of Cal. Civ. Code § 176l(c).

103. Defendants provided "goods" within the meaning of Cal. Civ. Code §§ 1761(a), 1770.

104. Plaintiffs and Class Members of the California Subclasses are "consumers" within the meaning of Cal. Civ. Code §§ l76l(d), 1770, and have engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761(e), 1770.

105. As set forth herein, Defendants' acts and practices, undertaken in transactions violate §1770 of the Consumers Legal Remedies Act in that Defendants represented that the goods or services have approval, characteristics, ingredients, uses, benefits, or quantities that they do not have.

106. Pursuant to the provision of Cal. Civ. Code §1780, Plaintiffs seek an order enjoining Defendants from the unlawful practices described herein, a declaration that Defendants' conduct violates the Consumers Legal Remedies Act, and attorneys' fees and costs of litigation.

**<u>COUNT IV: VIOLATIONS OF CALIFORNIA'S UNLAWFUL BUSINESS PRACTICES ACT, CAL. BUS. & PROF. CODE § 17200 ET. SEQ</u>**
**(On behalf of Plaintiff Barrales, Ghost California Subclass and Mondelez California Subclass)**

107. Plaintiff incorporates by reference paragraphs 1- 75 of this Complaint as if fully re-written herein. Plaintiff asserts this count on her own behalf and on behalf of the Ghost California Subclass and Mondelez California Subclass, as defined above, and pursuant to Rule 23.

108. Defendants have engaged in unfair competition within the meaning of Cal. Bus. & Prof. Code §§17200, et seq., because Defendants' conduct is unlawful, unfair, and/or fraudulent, as herein alleged.

109. Plaintiff, the class members, and Defendants are each a "person" or "persons" within the meaning of § 17201 of the California Unfair Competition Law ("UCL").

110. Defendants have engaged in unfair, deceptive, untrue, or misleading advertising by representing that their products are appropriate for children and failing to adequately disclose that such products are not safe or appropriate for children, and such acts and practices constitute deceptive acts or practices in violation of Section 5(a) of 15 U.S.C. § 45(a).

111. A violation of Section 5(a) of 15 U.S.C. § 45(a) represents a per se violation of the California Unfair Competition Law ("UCL").

112. The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies. Plaintiffs hereby incorporate by reference all prior causes of action into this cause of action.

113. By making statements that are not true and statements that are misleading, Defendants are in violation of California False Advertising Law, Cal. Civ. Code. §§ 17500, ET SEQ. 176. Plaintiff and the California Subclasses request that this Court enter such orders or

judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and Class Members any monies Defendants acquired by unfair competition, including restitution and/or equitable relief, including disgorgement or ill-gotten gains, refunds of monies, interest, reasonable attorneys' fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

114. Plaintiff and Class Members seek attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT V: UNJUST ENRICHMENT**
**(On behalf of Plaintiffs Barrales, Williams, Ghost Nationwide Subclass and Mondelez Nationwide Subclass)**

115. Plaintiffs incorporate by reference paragraphs 1-75 of this Complaint as if fully rewritten herein. As set forth above, Plaintiffs assert this count on their own behalf and on behalf of all the Ghost Nationwide Subclass and the Mondelez Nationwide Subclass as defined above and pursuant to Rule 23.

116. Defendants' deceptively marketed products caused Plaintiffs and Class Members to incorrectly believe that Defendants' jointly-marketed products were appropriate for children, which caused Plaintiff and Class Members to confer a direct benefit to all the Defendants.

117. On information and belief, Mondelez had an agreement with Ghost through which Mondelez receives a percentage of the revenue from the sales of Ghost products using Mondelez brands. Accordingly, Mondelez directly benefits from each and every unit of Ghost's energy drinks that are sold using Mondelez branding.

118. Upon information and belief, both Ghost and Mondelez directly benefitted from each sale of energy drinks to Plaintiffs and the Class Members.

119. Plaintiffs and Class Members continue to suffer injuries as a result of the Defendants' deceptive marketing practices, and Defendants continue to retain the benefits conferred by Plaintiffs and Class Members.

120. If the Defendants do not compensate the Plaintiffs, they will be unjustly enriched as a result of their unlawful act or practices.

121. It is an equitable principle that no one should be allowed to profit from his own wrong, therefore it would be inequitable for the Defendants to retain said benefit and reap unjust enrichment.

122. Since the Defendants unjustly enriched themselves at the expense of Plaintiffs and the class members, the Plaintiffs request the disgorgement of these ill-gotten monies.

123. Due to Defendants' conduct, Plaintiffs and the Class Members are entitled to damages according to proof.

## COUNT VI: NEGLIGENT MISREPRESENTATION

**(On behalf of Plaintiffs Barrales, Williams, Ghost Nationwide Subclass, and Mondelez Nationwide Subclass)**

124. Plaintiffs incorporate by reference all paragraphs 1-75 of this Complaint as if fully rewritten herein. As set forth above, the Plaintiffs assert this count on their own behalf and on behalf of the Ghost Nationwide Subclass and the Mondelez Nationwide Subclass as defined above and pursuant to Rule 23.

125. Defendants had a duty to be truthful in their commercial speech. In convincing the Plaintiffs to purchase Ghost and Mondelez's co-branded products, the Defendants, jointly through their partnership, made representations or omissions that they knew to be false, or negligently failed to examine the veracity of the affirmations.

126. Defendants intended that Plaintiffs and Class Members would rely on those misrepresentations or omissions in purchasing Defendant's co-branded products.

127. Plaintiffs and class members relied upon those misrepresentations and/or omissions in purchasing Defendant's co-branded products and would not have purchased such products had the fact that they were not intended or safe for children been communicated to Plaintiffs and the class members.

128. As a result of Defendants' negligent misrepresentations, Plaintiffs and the Nationwide Class Members suffered injury, including the cost of the products purchased and discarded.

**COUNT VII: BREACH OF EXPRESS WARRANTY**
**(On behalf of Plaintiffs Barrales, Williams. Ghost Nationwide Subclass, and Mondelez Nationwide Subclass)**

129. Plaintiffs incorporate by reference paragraphs 1-75 of this Complaint as if fully re-written herein. Plaintiffs assert this count on his own behalf and on behalf of the Ghost Nationwide Subclass and the Mondelez Nationwide Subclass as defined above and pursuant to Rule 23.

130. Defendants, jointly through their partnership, sold energy drinks to Plaintiffs and Class Members and provided an express warranty regarding those products when they marketed the products as safe for children and failed to conspicuously disclose otherwise. Since the description of the goods was made part of the basis of the bargain an express warranty was created that that the goods shall conform to the description.

131. Plaintiffs and Class Members reasonably relied upon said warranties and purchased Ghost products which failed to conform to the Defendants' description.

132. As a result of Defendants' breach of express warranties, Plaintiffs and the Class Members suffered damages including the cost of the products purchased and discarded.

## DEMAND FOR JURY TRIAL

133. Plaintiffs and those similarly situated Class Members demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Tinamarie Barrales, and Michael Williams, respectfully request that judgment be entered in their favor and in favor of the Class Members as follows:

a. Certifying and maintaining this action as a class action, with the named Plaintiffs as designated class representatives and with their counsel appointed as class counsel;

b. Declaring the Defendants in violation of each of the counts set forth above;

c. Awarding the Plaintiffs and those similarly situated compensatory, punitive, and treble damages.

d. Awarding the Plaintiffs and those similarly situated liquidated damages;

e. Order the disgorgement of ill-gotten monies;

f. Awarding each of the named Plaintiffs a service award;

g. Awarding pre-judgment, post-judgment, and statutory interest;

h. Awarding attorneys' fees and costs;

i. Awarding such other and further relief as the Court may deem just and proper.

Dated: February 12, 2024

Respectfully Submitted,

/s/ Keith L. Gibson
Keith L. Gibson, Esq.
Keith Gibson Law, P.C.
490 Pennsylvania Avenue, Suite 1
Glen Ellyn, IL 60137
Telephone: (630) 677-6745
Email: keith@keithgibsonlaw.com

Bogdan Enica, Esq. (*Pro Hac Vice* to be filed)
Keith Gibson Law, P.C.
66 West Flagler St., Ste. 937
Miami, FL 33130
Telephone: (305) 539-9206
Email: bogdan@keithgibsonlaw.com

*Attorneys for the Plaintiffs and the Putative Class*